

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRIAN RUHNKE AND<br>COLLEEN RUHNKE )<br>)<br>) | Case Number: 05 C 1395 |
| Plaintiff, )<br>) | Honorable Judge Marovich |
| vs. )<br>) | Magistrate Judge Denlow **FILED** |
| PIPE FITTERS' WELFARE FUND et al. )<br>an employee benefit plan, and )<br>Philip A. Doran, ) | APR **2 8** 2005 |
| Defendants. ) | MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

### Memorandum in Support of Defendant's Motion to Dismiss

Defendant, Philip A. Doran, by counsel, James L. Kopecky, P.C., in support of his

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), states as

follows:

### Facts

As alleged in plaintiff's complaint, she suffered injuries in an automobile accident

in May 1999. (*See Complaint,* attached hereto as Exhibit A, ¶ 6). In July 1999 plaintiff

hired Defendant, attorney Philip A. Doran (Doran) to file a personal injury action on her

behalf. *See* Complaint, ¶ 11). Ultimately, in June 2003 plaintiff settled the personal

action for a total recovery of $1,100,000.00. (*See* Complaint, ¶ 13).

From the time of the accident until the date of the settlement, the Pipe Fitters'

Welfare Fund 597 (the "Fund") paid all of plaintiff's medical bills for injuries she

sustained as a result of the accident. (*See* Complaint, ¶ 10). The Fund paid the medical

bills in accordance with the Pipe Fitters' Welfare Fund 597 Employee Benefit Plan (the

"Plan") and in accordance with the Subrogation Agreement entered into between plaintiff

and the Fund on June 24, 1999. (*See* Subrogation Agreement, attached as Exhibit B

hereto and as Exhibit B to Plaintiff's Complaint). Under the terms of the Plan and the

Subrogation Agreement, the Fund agreed to pay plaintiff's medical bills subject to

plaintiff's agreement to reimburse the Fund 100% of all bills paid if she recovered money

from a third party. (*See* the Plan, pp. 52-53; *see also* the Agreement ¶ 3).

By the time of the settlement, the Fund had paid $225,132.99 in medical bills on

plaintiff's behalf. (*See* Complaint, ¶ 10). At that time, under the plain language of both

the Plan and the Subrogation Agreement, plaintiff was obligated to reimburse the Fund

the entire amount of $225,132.99 if she received any money from a third-party.

Accordingly, when plaintiff settled her personal injury action for $1,100,000 the Fund

became entitled to 100% reimbursement, or $225,132.99. In addition, the Plan and

Subrogation Agreement remained in effect after the settlement. Consequently, plaintiff

remained obligated to reimburse the Fund 100% for future medical bills relating to the

accident up to the full $1.1 million dollars she recovered from the responsible third party.

After the settlement, however, plaintiff apparently submitted for payment by the

Fund $19,384.89 in additional medical bills for treatment relating to the injuries she

sustained in the accident. (*See* Complaint, ¶ 19). The Fund refused to pay the medical

bills asserting that, pursuant to the Plan and the Subrogation Agreement, the Fund was

not obligated to pay for medical bills relating to the accident unless and until plaintiff

exhausted the $1.1 million she recovered from the third party. (*See* Complaint, ¶ 20, 21).

Plaintiff has now filed this complaint against Doran alleging Legal Malpractice in

Count II and Breach of Fiduciary Duty in Count III. The essence of plaintiff's allegations

in both counts is that Doran entered into an unauthorized settlement agreement with the

2

Plan that resulted in a waiver of plaintiff's right to have the Fund pay her medical bills relating to the accident up to the amount of the personal injury settlement ($1,100,000). (*See* Complaint, ¶ 34, ¶39). Plaintiff alleges that Doran's actions required plaintiff to be "self-insured" for all future medical expenses related to the accident up to a "deductible" of $1,100,000. (*See* Complaint, ¶33).

What plaintiff fails to state to this Court, however, is that based on the plain language of plaintiff's Subrogation Agreement and the Plan, she would have been required to reimburse the Fund for all medical expenses relating to the accident up to the "deductible" of $1,100,000, regardless of Doran's actions. Plaintiff, therefore, cannot state a claim for damages and her complaint should be dismissed. Alternatively, Count III should be dismissed as duplicative of the Legal Malpractice action alleged in Count II.

<u>**Argument**</u>

**A.    Plaintiff Did Not Suffer, and Cannot Plead, Damages**

In order to plead a cause of action for both Legal Malpractice and Breach of Fiduciary Duty, plaintiff must plead cognizable damage. Here, plaintiff did not, and cannot, do so.

The Plan under which plaintiff received medical benefits contained a reimbursement provision which provides, in pertinent part:

> Subrogation or reimbursement rules apply if the Fund pays medical bills which arise out of an incident (accident) which may result in a claim against a third-party. Under these circumstances, the Fund is entitled to reimbursement of its expenditures. . . .
>
> If you and/or dependent receive payment for a third party for benefits paid by the Fund, you or the third party must reimburse the Fund Office. The proceeds from the settlement or judgment must be divided as follows:

First, a sum sufficient to full reimburse the Fund Office for all (100%) benefits advanced. No reductions or deductions are allowed for attorney's fees; then any remainder will be paid to you and/your dependent.

The proceeds of the settlement must be divided as stated above even if you and/or your dependent are not fully compensated for the loss. However, the Fund is not entitled to receive reimbursement in excess of the amount you and your dependent receive from all responsible parties.

(*See* Plan, attached to Complaint, p. 53)   In addition, plaintiff entered into a Subrogation

Agreement that provides:

Should Participant or his/her representative receive any money or other assets from a responsible Third Party, the Participant does hereby agree to reimburse the Trust Fund 100% of the benefits paid on account of the Accident by the Trust Fund, shall not, however, be entitled to reimbursement in excess of the amount which the Participant receives from all responsible Third Parties.

The Plan and the Subrogation Agreement constitute valid and enforceable

contracts. The contracts required plaintiff to reimburse the Fund for all medical expenses

related to the accident up to the full amount received from the responsible third party, in

this case up to the $1,100,000.00.

Further, subrogation and reimbursement contracts governed by ERISA that

require 100% reimbursement are entirely legal. *See e.g. Great-West Life & Annuity Ins.

Co.,* 534 U.S. 204, 207, 151 L.Ed. 2d 635, 122 S.Ct. 708 (2002) (the employee benefit

plan was entitled to reimbursement for benefits recovered from a third-party); *see also

Walmart v. Varco,* 338 F.3d 680 (7th Cir. 2003) (ERISA plan entitled to 100%

reimbursement). Courts, to ensure the integrity of pension and welfare plans, confine the

benefits to the terms of the plans as written. *See Walmart,* 338 F.3d at 690.

Here, the terms plaintiff agreed to under the Subrogation Agreement and the Plan

clearly state the Fund was, and is, entitled to recover all monies it had advanced for

4

plaintiff's medical expenses relating to the accident. Consequently, taking plaintiff's allegations as true for purposes of this motion, and assuming *arguendo* that Doran (1) did not have plaintiff's authority to negotiate a reduction of the Fund's lien; and (2) that Doran "waived" plaintiff's right to have her future bills paid by the Fund causing her to become "self-insure" up to a "deductible" of $1.1 million dollars, plaintiff still suffered no cognizable damages.

Examining the language of the agreements, there is no question that if, after the settlement, plaintiff maintained the right to submit her medical bills to the Fund for payment, the Fund would have retained its rights to reimbursement from her for 100% of those medical bills up to $1.1 million dollars. For example, accepting plaintiff's allegations as true, had Doran not waived plaintiff's right to have the Fund pay future medical bills, then plaintiff would have submitted the approximately $12,800 in medical bills relating to the accident to the Fund for payment. The Fund, according to plaintiff, would have paid that $12,800 in medical bills. However, under the plain language of the valid and enforceable contracts plaintiff entered into with the Fund, plaintiff would have then been obligated to reimburse the Fund that same $12,800. She would also have remained obligated to reimburse the Fund for all medical expenses relating to the accident up to $1.1 million dollars.

Any way you look at it, after accepting the $1,100,000 settlement from the responsible third party, plaintiff remained "self-insured" for future medical bills relating to the accident up to the "deductible" of $1.1 million dollars. Moreover, plaintiff admits that she authorized Doran to accept the $1.1 million dollar settlement with the responsible

5

third party. Accordingly, the alleged unauthorized settlement agreement with the Plan did not cause plaintiff damages.

Finally, Doran adopts and incorporates the argument made by the Fund in its Motion to Dismiss, Section III C. The Plan's administrator denied payment of plaintiff's medical bills relating to the accident, and the Trustee affirmed that denial, under the terms of the Plan and the Subrogation Agreement, not because of anything Doran did or did not do.

Consequently, because plaintiff cannot prove damages as matter of law, her complaint should be dismissed.

## B.     Counts II and III of Plaintiff's Complaint are Duplicative and, Therefore, Count III Should be Dismissed

Count II of Plaintiff's Complaint purports to allege a cause of action for Legal Malpractice against Doran and Count III purports to allege a cause of action for Breach of Fiduciary Duty against Doran. Both counts arise out of the same operative facts and allege the same injury to plaintiff. Therefore, under Illinois law, Counts II and III are duplicative and Count III should be dismissed.

It is well settled in Illinois that when, as in this case, the same operative facts support actions for both breach of fiduciary duty and professional malpractice, resulting in the same injury to the client, the actions are identical and the breach of fiduciary duty count should be dismissed as duplicative. *Majumbar v. Lurie*, 274 Ill.App.3d 267, 653 N.E.2d 915 (1st Dist.1995) (the court struck plaintiff's complaint where the legal malpractice and breach of fiduciary duty claims were based on the same facts); *Calhoun v. Rane*, 234 Ill. App. 3d 90, 599 N.E.2d 1318 (1992) (the court dismissed the plaintiff's breach of fiduciary duty claim as duplicative of plaintiff's legal malpractice claim citing

6

the allegations contained within as "virtually identical."); *Kirkland & Ellis v. CMI Corp.*,
1996 WL 559951 at 10 (N.D. Ill. 1996) (The breach of fiduciary duty claim did not allege
anything that was not in the malpractice claim).

Here, the operative facts supporting both the legal malpractice count and the
breach of fiduciary duty count are identical. In fact, in Count III, plaintiff merely
"restates and realleges the allegations of paragraphs 1-34" contained in Count II. (*See*
Complaint, Count II). Plaintiff then simply changes the description of her relationship
with Doran to a fiduciary relationship as opposed to an attorney-client relationship. (*See*
Complaint, ¶¶ 36-37) The allegations contained in Count III offer no new facts. Rather,
the allegations contained in Count III mirror the facts alleged in Count II. Moreover,
Count III alleges the same injury as that alleged by plaintiff Count II, i.e. plaintiff
suffered $19,384.00 in damages as well as attorney's fees. As such, Counts II and III are
duplicative and Count III must be dismissed.

WHEREFORE, Defendant, Philip A. Doran, prays that this Court enter an Order
dismissing plaintiff's Complaint with prejudice, or alternatively, dismissing Count III of
plaintiff's complaint with prejudice, and for such other and further relief as this Court
deems fair and just.

Respectfully submitted,

_____
Attorney for Defendant
Philip A. Doran

James L. Kopecky
James L. Kopecky, P.C.
321 N. Clark, Suite 2200
Chicago, IL 60602
312-527 – 3966
Atty No. 40148

Case 1:05-cv-0__95    Document 1    Filed 03/09/__5    Page 1 of 93    K.C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE MAROVICH

MAGISTRATE JUDGE DENLOW

BRIAN RUHNKE and COLLEEN RUHNKE,

Plaintiffs,

v.

PIPE FITTERS' WELFARE FUND, LOCAL 597, an
employee benefit plan, and PHILIP A. DORAN,

Defendants.

)
)
) Case No.
)
)
) Jury Demand
)
)
)
)
)
)

**05C 1395**

**F I L E D**

MAR – 9 2005   rq

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

## COMPLAINT

Plaintiffs Brian Ruhnke and Colleen Ruhnke, by their attorneys, Alvin R. Becker and

Deane B. Brown of Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, for

their Complaint against Pipe Fitters' Welfare Fund, Local 597 and Philip A. Doran, state as

follows:

### NATURE OF THE CASE

1.    This is an action for civil enforcement under the Section 502(a) of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, brought by Plaintiff Brian

Ruhnke ("Brian"), a plan participant, and his wife, Colleen Ruhnke ("Colleen"), a plan

beneficiary, against Defendant Pipe Fitters' Welfare Fund, Local 597, an employee benefit plan

(the "Plan"), to compel payment of benefits under the Plan for medical expenses incurred by

Colleen. In addition, Colleen brings an action for legal malpractice and breach of fiduciary duty

against Defendant Philip A. Doran, her former attorney, who entered into an unauthorized

settlement agreement with the Plan.



## PARTIES

2.      Plaintiffs Brian Ruhnke and Colleen Ruhnke are husband and wife residing in Tinley Park, Illinois. Brian has been a member of the Pipe Fitters' Local 597 since 1996 and is a plan participant covered under the health and welfare plan known as Pipe Fitters' Welfare Fund, Local 597 (the **"Plan"**). Colleen is a beneficiary and covered person under the Plan.

3.      Defendant Pipe Fitters' Welfare Fund, Local 597 is the health and welfare plan for Pipe Fitters' Local 597, and is an employee benefit plan under ERISA. The Plan is administered by a Board of Trustees in Chicago, Illinois.

4.      Defendant Philip A. Doran (**"Doran"**) is an attorney licensed to practice law in Illinois. His law office is located in Chicago, Illinois.

## JURISDICTION AND VENUE

5.      With respect to Count I, for civil enforcement under ERISA, jurisdiction is properly before this Court pursuant to 29 U.S.C. §§ 1132(e)(1). Venue is proper pursuant to 29 U.S.C. §§ 1132(c)(2), as this is the judicial district in which the Plan is administered as well as where the breach took place. The Court may exercise pendent jurisdiction over Counts II and III for legal malpractice and breach of fiduciary duty.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6.      In or about May 5, 1999, Colleen, who was then 40 years-old, was seriously injured in an automobile accident (the **"Accident"**). As a result of the Accident, Colleen suffered and continues to suffer debilitating nerve pain in her back, for which she has a spinal cord stimulator inserted in her spine. She has been forced to undergo multiple back and other surgeries, and expects to have additional surgeries in the future.

2

7.      At the time of the Accident, Colleen's husband Brian was a member of the Pipe Fitters' Local 597 and was a Plan participant. Colleen was a beneficiary and covered person under the Plan. A true and correct copy of the Summary Plan Description ("**SPD**") is attached hereto as Exhibit A.

8.      The SPD states, in pertinent part, as follows:

Subrogation or reimbursement rules apply if the Fund pays medical bills which arise out of an incident (accident) which may result in a claim against a third-party. Under these circumstances, the Fund is entitled to reimbursement of its expenditures.

* * *

You and/or your dependent must immediately notify the Fund Office whenever a claim against a third-party is made for yourself and/or your dependent regarding any loss for which benefits are received from the Fund. You and/or your dependent must cooperate with the Fund by providing, among other things, information requested by the Fund concerning subrogation or reimbursement. . . .

* * *

If you and/or your dependent receive payment from a third party for benefits paid by the Fund, you and or the third party must reimburse the Fund Office. The proceeds from the settlement or judgment must be divided as follows:

- First, a sum sufficient to fully reimburse the Fund Office for all (100%) benefits advanced. No reductions or deductions are allowed for attorneys' fees; then

- Any remainder will be paid to you and/or your dependent.

The proceeds of the settlement must be divided as stated above even if you and/or your dependent are not fully compensated for the loss. However, the Fund is not entitled to receive reimbursement in excess of the amount you/or your dependent receive from all responsible parties.

9.      On or about June 24, 1999, Brian and Colleen entered into a Subrogation Agreement with the Plan, which is referenced therein as the "Trust Fund." A true and correct copy of the Subrogation Agreement is attached hereto as Exhibit B.

3

10.     From approximately June 1999 through August 6, 2003, Brian submitted to the Plan medical bills in the amount of $225,132.99, for services rendered to Colleen as a result of the Accident, which the Plan paid.

11.     On or about July 1999, Colleen hired Doran to represent her in a personal injury action against the driver who caused the automobile accident. A true and correct copy of the attorney-client retention agreement between Colleen and Doran is attached hereto as Exhibit C. Doran subsequently filed a personal injury lawsuit on behalf of Colleen against Jeanne Habenicht in the Law Division of the Circuit Court of Cook County, Case Number 00 L 12596.

12.     At all times during his representation of Colleen, Doran was in possession of Colleen's medical records and knew or should have known about the serious nature of her injuries from the Accident, her multiple surgeries and her need for ongoing, costly medical treatment, including future surgeries.

13.     On or about June 2003, Doran settled the personal injury against Habenicht for $1,100,000 (the "**Personal Injury Settlement**"), pursuant to Colleen's authorization.

14.     On or about August 5, 2003, Doran engaged in a telephone conference with Dennis R. Johnson ("**Johnson**"), General Counsel to the Plan, in which the two men discussed a settlement of the Plan's right to reimbursement and subrogation. The next day, Johnson sent Doran a letter, a true and correct copy of which is attached hereto as Exhibit D (the "**August 6 Letter**"), in which Johnson made the following settlement offer (the "**Plan Settlement Offer**"): (a) the Plan would "accept $157,593.09 in full and final satisfaction of its rights to reimbursement and subrogation in the amount of $225,132.99" and (b) "future medical bills not already paid by" the Plan which are related to the Accident "will be [Colleen's] responsibility, unless and until she incurs related medical expenses which exceed the proceeds from the

4

litigation." The August 6 Letter stated that the Plan Settlement Offer would remain valid provided payment was received within 120 days.

15.    Upon receipt of the August 6 Letter, Doran did not provide Colleen with a copy of it or otherwise discuss the Plan Settlement Offer with her. Rather, shortly after receiving the August 6 Letter and without Colleen's knowledge, consent or authorization, Doran accepted the Plan Settlement Offer by sending the Plan a check for the stated amount of $157,593.09. Colleen never signed an agreement or otherwise authorized Doran to accept the Plan Settlement Offer on her behalf.

16.    Although Doran provided Colleen with a Settlement Breakdown Sheet which indicated that the Plan's Lien of $225,132.99 had been "compromised for" $157,593.09, Doran did not advise Colleen that as part of this so-called "compromise," he had agreed that the Plan would deny Colleen future benefits for further medical treatment for injuries related to the Accident until the Personal Injury Settlement had been fully expended.

17.    It was not until the end of August 2003 that Colleen and Brian first learned that Doran had, without authority, accepted the Plan Settlement Offer on Colleen's behalf. Their knowledge arose when Brian submitted to the Plan after August 6, 2003, additional medical bills related to the Accident and the Plan mailed back a notice indicating that payment of Colleen's medical bills was "Denied Per Subrogation Agreement." Upon receipt of this notice, Colleen contacted Beverly Gratowski ("Gratowski"), an officer of the Plan, to inquire about the non-payment of her medical bills. Gratowski informed Colleen that she should talk to Doran, who had accepted the Plan Settlement Offer on her behalf, pursuant to which Colleen would be responsible for paying her own medical bills related to the Accident until such time as Colleen incurs related medical expenses which exceed the proceeds of the Personal Injury Settlement.

18.    When Colleen called Doran to discuss his unauthorized acceptance of the Plan Settlement Offer, Doran first denied any recollection of doing so, but ultimately sent Colleen a copy of the August 6 Letter in or about the end of October 2003.

19.    Colleen continued to incur medical bills in the approximate amount of $19,384.89, which Brian submitted to the Plan and which the Plan rejected based on the purported acceptance of the Plan Settlement Offer.

20.    Colleen and Brian subsequently retained counsel, Alvin R. Becker ("Becker") of Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, to appeal the Plan's denial of reimbursement for her medical treatment related to the accident. On or about August 13, 2004, Becker sent a letter to the Board of Trustees for the Plan, requesting that the Trustees overrule the denial of Plan benefits to Colleen on the basis that: (a) there is no Plan provision, no Plan summary description, and no Subrogation Agreement provision which authorizes the Plan to recover any more or limit future benefits available to members; and (b) the Plan Settlement Offer accepted by Doran had not been authorized by Colleen. A true and correct copy of Becker's August 13, 2004 letter is attached hereto as Exhibit E.

21.    On or about November 18, 2004, the Plan's Claim Manager, Liz Eastman, wrote Becker a letter, in which she stated, *inter alia*, that the Plan was denying the Ruhnke's appeal, in light of Doran's acceptance of the Plan Settlement Offer. A true and correct copy of Eastman's November 18, 2004 letter is attached hereto as Exhibit F.

22.    In late 2003 and throughout 2004, Plaintiffs received numerous telephone calls and letters from doctors and hospitals to whom they owed money for Colleen's medical bills related to the accident. Because Colleen continues to require ongoing treatment from these providers, Plaintiffs, in or about December 2004, paid outstanding medical bills in the

6

approximate amount of $12,800, which the Plan had previously rejected. A number of Colleen's outstanding medical bills remain due and owing.

## COUNT I

### (Civil Enforcement Under Section 502(a) of ERISA, 29 U.S.C. § 1132, Against The Plan)

23.    Plaintiffs restate and reallege the allegations of Paragraphs 1-22 as if fully set forth herein as the basis of Count I for civil enforcement under Section 502(a) of ERISA, 29 U.S.C. § 1132, against the Plan.

24.    Section 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that a civil enforcement action may be brought by a participant or beneficiary against an employee benefit plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

25.    Pursuant to the Plan, SPD and Subrogation Agreement in effect at the time of the Personal Injury Settlement, the Plan was entitled to recover from the Personal Injury Settlement 100% of the benefits paid on account of the Accident by the Plan. In accordance with the laws of Illinois, a reasonable attorney's fee in procuring the reimbursement to the Plan was to be deducted from the amount the Plan was entitled to recover from the Personal Injury Settlement.

26.    There is no provision in the Plan, the SPD or the Subrogation Agreement which authorized the Plan to limit future benefits available to individual plan participants or beneficiaries.

27.    Additionally, as Colleen did not authorize Doran to accept the Plan Settlement Offer, the Plan is without authority to deny payment of medical bills related to the Accident which were incurred after August 6, 2003.

28.    Accordingly, Colleen and Brian respectfully request, pursuant to Section 502(a) of ERISA, that the Court enforce their rights under the plan and: (a) compel the Plan to pay any and all outstanding medical bills related to the Accident; and (b) declare that the Plan must pay all future medical bills related to the Accident which are incurred by Colleen, as long as Brian remains a Plan participant.

WHEREFORE, Plaintiffs Brian Ruhnke and Colleen Ruhnke pray as follows:

A.    For the entry of an Order pursuant to 29 U.S.C. § 1132(a)(1)(B), enforcing their rights under the Plan by compelling the Plan to pay any and all outstanding medical bills related to the Accident;

B.    For the entry of an Order pursuant to 29 U.S.C. § 1132(a)(3), declaring that the Plan must pay all future medical bills related to the Accident which are incurred by Colleen, as long as Brian remains a Plan participant;

C.    For Plaintiffs' attorneys fees and costs incurred in bringing this action, pursuant to 29 U.S.C. § 1132(g); and

D.    For such other and further relief as may be just and proper.

## COUNT II

### (Legal Malpractice Against Doran)

29.    Colleen restates and realleges the allegations of Paragraphs 1-22 as if fully set forth herein as the basis of Count II for legal malpractice against Doran.

30.    An attorney-client relationship existed between Colleen and Doran.

31.    As Colleen's attorney, Doran had a duty to exercise a reasonable degree of care and skill in representing Colleen in all facets of her personal injury action, including any negotiation and settlement with lien holders to whom funds were due out of the Personal Injury

Settlement. Doran also had a duty to act within the authority granted to him by Colleen and not to exceed such authority.

32.    As Colleen did not authorize Doran to accept the Plan Settlement Offer on her behalf, Doran failed to exercise a reasonable degree of care and skill in representing Colleen when he accepted the Plan Settlement Offer without Colleen's knowledge or authorization.

33.    Doran also failed to exercise a reasonable degree of care and skill in representing Colleen when, by accepting the Plan Settlement Offer without authority, Doran compromised Colleen's rights under the Plan to receive payment for future medical bills related to the Accident, up to the amount of the Personal Injury Settlement, when Doran knew or should have known that Colleen would require ongoing, costly medical treatment, including future surgeries. Essentially, Doran's negligent actions required Colleen to be self-insured for all future medical expenses related to the Accident up to a "deductible" of $1,100,000.

34.    As a proximate result of Doran's breach of his duty to exercise a reasonable degree of care and skill in representing Colleen when he accepted the Plan Settlement Offer without Colleen's knowledge or authorization, which acceptance compromised Colleen's rights under the Plan to receive payment for future medical bills related to the Accident up to the amount of the Personal Injury Settlement, Colleen has suffered actual damages in that: (a) she and Brian were forced to pay approximately $12,800 in medical bills related to the Accident which the Plan had rejected, while other medical bills remain unpaid; and (b) she and Brian were forced to hire attorneys and incur legal fees to appeal the Plan's denial of payment of medical payments and to bring this action.

WHEREFORE, Plaintiff Colleen Ruhnke prays as follows:

A.    For compensatory damages in an amount to be determined at trial; and

9

B.      For such other and further relief as may be just and proper.

## COUNT III

### (Breach of Fiduciary Duty Against Doran)

35.      Colleen restates and realleges the allegations of Paragraphs 1-34 as if fully set forth herein as the basis of Count III for breach of fiduciary against Doran.

36.      An attorney-client relationship existed between Colleen and Doran, pursuant to which Doran owed Colleen a fiduciary duty as a matter of law.

37.      As Colleen's attorney, Doran owed Colleen a fiduciary duty of fidelity, honesty, good faith and full disclosure.

38.      Doran breached these fiduciary duties to Colleen when he accepted the Plan Settlement Offer: (a) without discussing the Plan Settlement Offer with Colleen or explaining its potential ramifications; and (b) without her knowledge or authorization.

39.      As a proximate result of Doran's breach of his fiduciary duties to Colleen when he accepted the Plan Settlement Offer without discussing the Plan Settlement Offer with Colleen or explaining its potential ramifications and without Colleen's knowledge or authorization, which acceptance compromised Colleen's rights under the Plan to receive payment for future medical bills related to the Accident up to the amount of the Personal Injury Settlement, Colleen has suffered actual damages in that: (a) she and Brian were forced to pay approximately $12,800 in medical bills related to the Accident which the Plan had rejected, while other medical bills remain unpaid; and (b) she and Brian were forced to hire attorneys and incur legal fees to appeal the Plan's denial of payment of medical payments and to bring this action.

WHEREFORE, Plaintiff Colleen Ruhnke prays as follows:

A.      For compensatory damages in an amount to be determined at trial;

10

B.     For the entry of an Order requiring Doran to disgorge his attorneys fees earned while he was in breach of his fiduciary duties; and

C.     For such other and further relief as may be just and proper.

### JURY DEMAND

40.     Plaintiff Colleen Ruhnke demands a jury trial on all counts so triable.

Respectfully submitted,

BRIAN RUHNKE and COLLEEN RUHNKE

By: _____

One of their Attorneys

Alvin R. Becker
Atty. No. 147966
Deane B. Brown
Atty. No. 6203878
Beermann, Swerdlove, Woloshin,
 Barczky, Becker, Genin & London
161 N. Clark Street, Suite 2600
Chicago, Illinois 60601
(312) 621-9700

11

EXHIBIT A



# Pipe Fitters' Welfare and Retirement Funds, Local 597

45 NORTH OGDEN AVE.    CHICAGO, ILLINOIS 60607    PHONE 312/829-4191

UNION TRUSTEES:
FRANCIS X. McCARTIN
KENNETH M. LEE
CURTIS L. OADE
ROSS P. KUCKER

EMPLOYER TRUSTEES:
LEE E. GETSCHOW
ROBERT F. LAMBKER
FREDERICK E. OYER
JOHN D. CURRAN

## SUBROGATION AGREEMENT

This Subrogation and Reimbursement Agreement ("Agreement") by and between the PIPE

FITTERS' WELFARE FUND, LOCAL 597 ("TRUST FUND) and _Brian + Colleen_

is hereby entered into this _24th_ day of _June_ 199_9_

WHEREAS, the Participant sustained injuries from an "Accident" (any loss or damage) for

which a "Third Party" is or may be responsible on the _5_ day of _May_ 199_9_

WHEREAS, the Participant has or will submit medical bills associated with the Accident to the
TRUST FUND for payment.

WHEREAS, this Agreement is entered in pursuant to Article XI Section 1 of the Pipe Fitters'
Welfare Fund, Local 597 Plan Document.

NOW THEREFORE, for other good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the TRUST FUND and Participant do mutually agree as
follows:

1. The TRUST FUND agrees to pay the medical bills associated with the Accident according to the Pipe Fitters' Welfare Fund, Local 597 Plan Document.

2. Participant does hereby assign and subrogate to the TRUST FUND, all of the rights, claims, interests, chooses or things in action and action at law, to the extent of the amount which has been or will be paid by the TRUST FUND which the Participant may have against any party, person, firm or corporation, private or public, who may be liable or may hereafter be adjudged liable, for the loss, and the Participant authorizes and empowers the TRUST FUND, to sue, compromise or settle in the name of the Participant, and, said TRUST FUND is hereby fully substituted in the place of the Participant. Participant further agrees that he/she will execute any and all appeal bonds or other instruments in writing pertaining to any litigation arising out of losses herein above referred to, at the request of the TRUST FUND's representatives.



# Pipe Fitters' Welfare and Retirement Funds, Local 597

### 45 NORTH OGDEN AVE.   CHICAGO, ILLINOIS 60607   PHONE 312/829-4191

UNION TRUSTEES:
FRANCIS K. McGARTIN
KENNETH M. LIN
CURTIS L. DADE
ROSS R. FLICKER

EMPLOYER TRUSTEES:
LEE E. GETSCHOW
ROBERT E. LAWRENCE
FREDERICK B. OYER
JOHN B. CURRAN

3. Should Participant or his/her representative receive any money or other assets from a responsible Third Party, the Participant does hereby agree to reimburse the TRUST FUND 100% of the benefits paid on account of the Accident by the TRUST FUND, shall not, however, be entitled to receive reimbursement in excess of the amount which the Participant receives from all responsible Third Parties.

4. The recitals shall be a part of this Agreement.

OFFICER OF PIPE FITTERS'                    PARTICIPATING MEMBER
WELFARE FUND LOCAL 597

_Beverly Gratkowski_
(Sign name above)                           _Brian Ruhnke_
                                            (Sign name above)

BEVERLY GRATKOWSKI                          Brian Ruhnke
(Print name above)                          (print name above)

                                            SS#: 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

                                            PH#: 708-532-8742

                                            On behalf of: Colleen Ruhnke
                                                          (Print name above)

                                            Relationship: Wife

                                            Colleen