FILED LAL

MAY 2 5 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**BRIAN RUHNKE and COLLEEN RUHNKE,**

**Plaintiffs,**

**v.**

**PIPE FITTERS' WELFARE FUND, LOCAL 597, an employee benefit plan, and PHILIP A. DORAN,**

**Defendants.**

**Case No. 05 C 1395**

**Judge Marovich**

## NOTICE OF FILING

TO: Dennis R. Johnson, Esq.
Jennifer C. Smetters, Esq.
Johnson, Smetters & Krol, LLC
208 South LaSalle St., Suite 1602
Chicago, Illinois 60604

James L. Kopecky, Esq.
James L. Kopecky, PC
350 North LaSalle St.
Suite 800
Chicago, Illinois 60602

PLEASE TAKE NOTICE that on **May 25, 2005**, we filed with the Clerk of the U.S. District Court, Northern District, Illinois, **Plaintiff's Response in Opposition to Defendant Pipe Fitters' Welfare Fund, Local 597's Motion to Dismiss Count I of Complaint** and **Plaintiffs' Response in Opposition to Defendant Philip A. Doran's Motion to Dismiss Counts I and II of Complaint**, copies of which are attached hereto and are hereby served upon you.

BEERMANN, SWERDLOVE, WOLOSHIN, BAREZKY, BECKER, GENIN & LONDON
Attorneys for Plaintiffs

By: ______________________
Alvin R. Becker, One of Their Attorneys

Alvin R. Becker – Atty No. 147966
Deane B. Brown – Atty No. 6203878
Beermann, Swerdlove, Woloshin,
Barezky, Becker, Genin & London
161 North Clark Street, Suite 2600
Chicago, Illinois 60601
(312) 621-9700

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalties of perjury as provided by law pursuant to 735 ILCS 5/1-109, that the above Notice of Filing, together with the documents referred to therein, were sent to the individuals indicated above ☐ by facsimile to the number indicated above; and/or ☐ by personal delivery to the address set forth above; and/or ☐ in open court; and/or ☒ by depositing same in the U.S. Mail with proper postage prepaid, before 5:00 p.m. on **May 25, 2005**.

______________________
Alicia Salibellas

FILED LAL
MAY 2 5 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN RUHNKE and COLLEEN RUHNKE, | ) | |
| Plaintiffs, | ) | Case No. 05 C 1395 |
| v. | ) | Judge Marovich |
| PIPE FITTERS' WELFARE FUND, LOCAL 597, an employee benefit plan, and PHILIP A. DORAN, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT PHILIP A. DORAN'S MOTION TO DISMISS COUNTS I AND II OF COMPLAINT**

**Introduction**

On March 9, 2005, Plaintiff Brian Ruhnke ("**Brian**"), a plan participant, and his wife, Colleen Ruhnke ("**Colleen**"), a plan beneficiary, filed a Complaint for civil enforcement under Section 502(a) of the Employee Retirement Income Security Act ("**ERISA**"), 29 U.S.C. § 1132, against Defendant Pipe Fitters' Welfare Fund, Local 597 (the "**Plan**"), an employee benefit plan, to compel payment of benefits under the Plan for medical expenses incurred by Colleen as a result of a car accident (Count I). Colleen also brought an action for legal malpractice and breach of fiduciary duty (Counts II and III) against Defendant Philip A. Doran ("**Doran**"), Colleen's former attorney, who entered into an unauthorized settlement agreement with the Plan in which he compromised the Plan's lien for a lesser amount, but agreed - - unbeknownst to Colleen - - that the Plan would deny Colleen future benefits for further medical treatment for injuries related to the accident until the full amount of the personal injury settlement she had received had been fully expended.

On April 28, 2005, Doran filed a Motion To Dismiss Counts II and III of the Complaint and supporting Memorandum ("**Memo**"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.[1] Doran argues that: (a) Colleen did not suffer and cannot plead damages as required for legal malpractice and breach of fiduciary duty because Colleen would have been required under the Plan and Subrogation Agreement to reimburse the Fund for all medical expenses relating to the accident up to the amount of her $1,100,000 personal injury settlement, regardless of Doran's actions; and (b) Count II for legal malpractice and Count III for breach of fiduciary duty against Doran are duplicative and Count III should therefore be dismissed.

As fully set forth below, the Court should deny Doran's Motion To Dismiss because Colleen has adequately alleged that she has been damaged by Doran's actions since there is no provision in the Plan, SPD or Subrogation Agreement which required Colleen, after settlement and reimbursement to the Plan, to use her settlement proceeds to fund her future medical expenses. Moreover, Doran's Motion To Dismiss Count III for breach of fiduciary duty as duplicative of Count II for legal malpractice should be denied as premature, since Colleen is not required to elect between these two causes of action at the pleadings stage of the litigation, pursuant to Fed. R. Civ. P. 8(e)(2).

**Factual Allegations of the Complaint**

On May 5, 1999, Colleen, who was then 40 years-old, was seriously injured in an automobile accident (the "**Accident**") as a result of which she suffered and continues to suffer debilitating nerve pain in her back, for which she has a spinal cord stimulator inserted in her spine. (¶ 6). Colleen has been forced to undergo multiple back and other surgeries, and expects to have additional surgeries in the future. (¶ 6). At the time of the Accident, Colleen's husband Brian was a member of the Pipe Fitters' Local 597 and was a Plan participant; Colleen was a beneficiary and covered person under the Plan. (¶ 7).

[1] The Plan filed a Motion To Dismiss on March 31, 2005, to which Plaintiffs have filed a separate Response.

The Summary Plan Description ("**SPD**"), a copy of which is attached to the Complaint as Exhibit A, states, in pertinent part, as follows:

> Subrogation or reimbursement rules apply if the Fund pays medical bills which arise out of an incident (accident) which may result in a claim against a third-party. Under these circumstances, the Fund is entitled to reimbursement of its expenditures.
>
> * * *
>
> You and/or your dependent must immediately notify the Fund Office whenever a claim against a third-party is made for yourself and/or your dependent regarding any loss for which benefits are received from the Fund. You and/or your dependent must cooperate with the Fund by providing, among other things, information requested by the Fund concerning subrogation or reimbursement. . . .
>
> * * *
>
> If you and/or your dependent receive payment from a third party for benefits paid by the Fund, you and or the third party must reimburse the Fund Office. The proceeds from the settlement or judgment must be divided as follows:
>
> - First, a sum sufficient to fully reimburse the Fund Office for all (100%) benefits advanced. No reductions or deductions are allowed for attorneys' fees;[2] then
> - Any remainder will be paid to you and/or your dependent.
>
> The proceeds of the settlement must be divided as stated above even if you and/or your dependent are not fully compensated for the loss. However, the Fund is not entitled to receive reimbursement in excess of the amount you/or your dependent receive from all responsible parties.

(¶ 8). On June 24, 1999, Brian and Colleen entered into a Subrogation Agreement, a copy of which is attached to the Complaint at Exhibit B. (¶ 9).

From approximately June 1999 through August 6, 2003, Brian submitted to the Plan medical bills in the amount of $225,132.99, for services rendered to Colleen as a result of the

[2] Notwithstanding the Plan provision that does not allow for a reduction in benefits advanced to account for attorneys fees incurred in obtaining the third party payment, Colleen filed her personal injury lawsuit against the driver who caused the Accident in Illinois state court, as discussed below, and the Plan's reimbursement would therefore have been reduced proportionately to account for the reasonable value of Doran's fees in obtaining the Personal Injury Settlement, pursuant to the Illinois Supreme Court's ruling in *Scholtens v. Schneider*, 173 Ill.2d 375, 671 N.E.2d 657 (1996). Accordingly, Doran's argument, citing federal case law, that "subrogation and reimbursement contracts governed by ERISA that require 100% reimbursement are entirely legal" is incorrect. (Memo at 4).

Accident, which the Plan paid. (¶ 10). In July 1999, Colleen hired Doran to represent her in a personal injury action against the driver who caused the Accident and Doran subsequently filed a personal injury lawsuit on behalf of Colleen against Jeanne Habenicht in the Law Division of the Circuit Court of Cook County, Case Number 00 L 12596. (¶ 11). Pursuant to his representation of Colleen, Doran was in possession of Colleen's medical records and knew or should have known about the serious nature of her injuries from the Accident, her multiple surgeries and her need for ongoing, costly medical treatment, including future surgeries. (¶ 12). On June 2003, Doran settled the personal injury against Habenicht for $1,100,000 (the "**Personal Injury Settlement**"), pursuant to Colleen's authorization. (¶ 13).

On August 5, 2003, Doran engaged in a telephone conference with Dennis R. Johnson ("**Johnson**"), General Counsel to the Plan, in which the two men discussed a settlement of the Plan's right to reimbursement and subrogation. (¶ 14). The next day, Johnson sent Doran a letter (the "**August 6 Letter**"), attached as Exhibit D to the Complaint, in which Johnson made the following settlement offer (the "**Plan Settlement Offer**"): (a) the Plan would "accept $157,593.09 in full and final satisfaction of its rights to reimbursement and subrogation in the amount of $225,132.99" and (b) "future medical bills not already paid by" the Plan which are related to the Accident "will be [Colleen's] responsibility, unless and until she incurs related medical expenses which exceed the proceeds from the litigation." (¶ 14). The August 6 Letter stated that the Plan Settlement Offer would remain valid provided payment was received within 120 days. (¶ 14).

Upon receipt of the August 6 Letter, Doran did not provide Colleen with a copy of it or otherwise discuss the Plan Settlement Offer with her, but rather, shortly after receiving the August 6 Letter and without Colleen's knowledge, consent or authorization, Doran accepted the Plan Settlement Offer by sending the Plan a check for the stated amount of $157,593.09. (¶ 15).

Colleen never signed an agreement or otherwise authorized Doran to accept the Plan Settlement Offer on her behalf. (¶ 15). Although Doran provided Colleen with a Settlement Breakdown Sheet which indicated that the Plan's Lien of $225,132.99 had been "compromised for" $157,593.09, Doran did not advise Colleen that as part of this so-called "compromise," he had agreed that the Plan would deny Colleen future benefits for further medical treatment for injuries related to the Accident until the Personal Injury Settlement had been fully expended. (¶ 16).

It was not until the end of August 2003 that Colleen and Brian first learned that Doran had, without authority, accepted the Plan Settlement Offer on Colleen's behalf. (¶ 17). Their knowledge arose when Brian submitted to the Plan after August 6, 2003, additional medical bills related to the Accident and the Plan mailed back a notice indicating that payment of Colleen's medical bills was "Denied Per Subrogation Agreement." (¶ 17). Upon receipt of this notice, Colleen contacted Beverly Gratowski ("**Gratowski**"), an officer of the Plan, to inquire about the non-payment of her medical bills. (¶ 17). Gratowski informed Colleen that she should talk to Doran, who had accepted the Plan Settlement Offer on her behalf, pursuant to which Colleen would be responsible for paying her own medical bills related to the Accident until such time as Colleen incurs related medical expenses which exceed the proceeds of the Personal Injury Settlement. (¶ 17).

When Colleen called Doran to discuss his unauthorized acceptance of the Plan Settlement Offer, Doran first denied any recollection of doing so, but ultimately sent Colleen a copy of the August 6 Letter in or about the end of October 2003. (¶ 18). Colleen continued to incur medical bills in the approximate amount of $19,384.89, which Brian submitted to the Plan and which the Plan rejected based on the purported acceptance of the Plan Settlement Offer. (¶ 19). Colleen and Brian subsequently retained counsel, Alvin R. Becker ("**Becker**"), to appeal the Plan's denial of reimbursement for her medical treatment related to the accident. (¶ 20). On or about

August 13, 2004, Becker sent a letter to the Board of Trustees for the Plan, a copy of which is attached as Exhibit E to the Complaint, requesting that the Trustees overrule the denial of Plan benefits to Colleen on the basis that: (a) there is no Plan provision, no Plan summary description, and no Subrogation Agreement provision which authorizes the Plan to recover any more or limit future benefits available to members; and (b) the Plan Settlement Offer accepted by Doran had not been authorized by Colleen. (¶ 20).

On or about November 18, 2004, the Plan's Claim Manager, Liz Eastman, wrote Becker a letter, a copy of which is attached as Exhibit F to the Complaint, in which she stated, *inter alia*, that the Plan was denying the Ruhnke's appeal, in light of Doran's acceptance of the Plan Settlement Offer. (¶ 21). In late 2003 and throughout 2004, Plaintiffs received numerous telephone calls and letters from doctors and hospitals to whom they owed money for Colleen's medical bills related to the accident. (¶ 22). Because Colleen continues to require ongoing treatment from these providers, Plaintiffs, in or about December 2004, paid outstanding medical bills in the approximate amount of $12,800, which the Plan had previously rejected, although a number of Colleen's outstanding medical bills remain due and owing. (¶ 22).

## Argument

### A. Doran's Motion To Dismiss Counts II And III Should Be Denied Because Colleen Has Adequately Alleged Damages By Doran's Unauthorized Acceptance Of The Plan Settlement Offer.

Doran argues that Counts II and III must be dismissed because Colleen did not suffer and cannot plead damages as required for legal malpractice and breach of fiduciary duty because Colleen would have been required under the Plan and Subrogation Agreement to reimburse the Fund for all medical expenses relating to the accident up to the amount of her $1,100,000 personal injury settlement, regardless of Doran's actions. (Memo at 4-6). This argument should be rejected as it is based on non-existent language in the Plan documents.

Pointing to no specific language, Doran speculates that "there is no question that if, after the settlement, plaintiff maintained the right to submit her medical bills to the Fund for payment, the Fund would have retained its right to reimbursement from her for 100% of those medical bills up to $1.1 million dollars." (Memo at 5). Doran is incorrect because there is, in fact, a "question" as to what happens to Colleen's future medical payments relating to the Accident after she has reimbursed the Fund for benefits paid to date. There is no provision in the Plan, SPD or Subrogation Agreement which requires Colleen, after receiving her Personal Injury Settlement, and after reimbursing the Fund for expenses paid to date, to use her settlement proceeds to fund her future medical expenses related to the Accident - - although such a provision easily could have been inserted into the Plan documents. Notably, Doran points to no such provision in his Memo. Instead, the Plan states, in essence, that once there is a settlement, the Plan must be reimbursed for the benefits it has paid to date. The Plan is silent as to what happens with future medical expenses after the Plan receives its reimbursement.

Rather than allow this ambiguity in the Plan to be construed against the Plan, as drafter, as the law provides, *see Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 269 (4th Cir. 2002), Doran went ahead without Colleen's knowledge or authority and compromised Colleen's rights under the Plan to receive payment for future medical bills related to the Accident, up to the amount of the Personal Injury Settlement. (¶ 33). As alleged in the Complaint, Doran's negligent actions required Colleen to be self-insured for all future medical expenses related to the Accident up to a "deductible" of $1,100,000 (¶ 33), when there is absolutely no provision in the Plan documents which otherwise would have required this to occur. Thus, Doran's argument that Colleen suffered no damages due to his negligence should be flatly rejected.

Moreover, Doran's argument ignores the other allegations of damages in the Complaint: that because of Doran's negligence in accepting the Plan Settlement Offer without Colleen's

knowledge and consent, Plaintiffs were forced to pay $12,800 in medical bills related to the Accident which the Plan had rejected, while other medical bills related to the Accident remain unpaid, and that Plaintiffs have incurred legal fees to appeal the Plan's denial of Colleen's medical expenses and to bring this action. (¶¶ 34, 39).

In a final argument in support of his Motion To Dismiss, Doran "adopts and incorporates the argument made by the Fund in its Motion to Dismiss, Section III C." (Memo at 6). Accordingly, Plaintiffs incorporate by reference their Response In Opposition To Defendant Pipe Fitters' Welfare Fund, Local 597's Motion To Dismiss Count I Of Complaint, filed contemporaneously herewith, which sets forth in detail why the Plan's argument is without merit. Plaintiffs note, however, that Doran makes a blatant misstatement in his Memo when he claims that the "Plan's administrator denied payment of plaintiff's medical bills related to the accident, and the Trustee affirmed that denial, under the terms of the Plan and the Subrogation Agreement, not because of anything Doran did or did not do." (Memo at 6). The letter dated November 18, 2004 from Liz Eastman, which explains the Trustees' denial, is attached as Exhibit F to the Complaint. Page 2 of this letter clearly references the Plan Settlement Offer for which Doran was directly responsible. As the exhibits to the Complaint control over any allegations to the contrary, *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir. 1998), Doran's argument should be rejected.

As Colleen has adequately alleged damages to support her claims for legal malpractice and breach of fiduciary duty, Doran's Motion To Dismiss Counts II and III should be denied.

**B. Doran's Motion To Dismiss Count III For Breach Of Fiduciary Duty As Duplicative Of Count II For Legal Malpractice Should Be Denied As Premature, Since Colleen Is Not Required To Elect Between These Two Causes Of Action At The Pleadings Stage Of The Litigation, Pursuant To Fed. R. Civ. P. 8(e)(2).**

Doran argues that Count III for breach of fiduciary duty should be dismissed pursuant to Rule 12(b)(6) as duplicative of Count II for legal malpractice because "[b]oth counts arise out of

the same operative facts and allege the same injury to plaintiff." (Memo at 6). Doran's argument is without merit, and in all events, is premature at the pleadings stage of the litigation.[3]

As an initial matter, the Illinois Appellate Court acknowledged in *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 273, 653 N.E.2d 915, 920-21 (1st Dist. 1995), a case cited by Doran (Memo at 6), that "an action for legal malpractice is conceptually distinct from an action for breach of fiduciary duty." Indeed, counts for both legal malpractice and breach of fiduciary duty arising from the same "operative" facts were allowed to stand in *Coughlin v. SeRine*, 154 Ill. App. 3d 510, 513-14, 507 N.E.2d 505, 508-09 (1st Dist. 1987). The gist of both claims was the attorney overcharged the client and billed him for unnecessary legal services. *Id.* Courts have acknowledged that "it is possible, under Illinois law, to properly plead a cause of action for malpractice and a separate action for breach of fiduciary duty." *Rose v. MONY Life Ins. Co.*, 2001 WL 214200 at * 4 (N.D.Ill. March 2, 2001) (Kocoras, J.); *Pavilion Hotel Corp. v. Koch*, 2000 WL 51817 at * 2 (N.D.Ill. Jan. 14, 2000) (Kocoras, J.).

Even if the Court determines that Colleen may not recover under both claims, Doran's motion to dismiss Count III for breach of fiduciary duty because it is duplicative of Count II for legal malpractice is premature, since Colleen is not required to elect between these two causes of action at the pleadings stage of the litigation, pursuant to Fed. R. Civ. P. 8(e)(2). *Grubman v. Rubin*, 1986 WL 12276 at * 3 (N.D.Ill. Oct. 28, 1986) (Grady, J.). Rule 8(e)(2) states, in pertinent part, that a "party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. . . . A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds."

[3] As Counts II and III are based on the Court's pendent jurisdiction, they are governed substantively by Illinois law, *United States v. Bob Stofer Oldsmobile-Cadillac, Inc.*, 853 F.2d 1392, 1397 (7th Cir. 1988), but procedurally, they are governed by Fed. R. Civ. P. 8.

In *Grubman*, the District Court explicitly held that Fed. R. Civ. P. 8(e)(2) "authorizes pleading in the alternative and permits a party to seek inconsistent remedies 'without being required to elect between them at the pleadings stage of the litigation." *Id.* at * 3 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1283, at 375 (1969)). Thus, Judge Grady found that "[s]eeking dismissal on an election of remedies theory is thus premature on a Rule 12(b)(6) motion for failure to state a claim." *Id.* This Court reached the same conclusion in *International Cargo and Surety Ins. Co. v. United States of America, DMV USA, Inc.*, 1992 WL 168954 at * 2 (N.D.Ill. July 15, 1992) (Marovich, J.). There, the Court denied a Rule 12(b)(6) motion to dismiss a claim for unjust enrichment which had been pled along with a claim for breach of contract even though the Court acknowledged that Illinois law "eventually" precludes a plaintiff from recovery under both theories. *Id.* Citing Fed. R. Civ. P. 8(e)(2), the Court found that dismissal was "inappropriate given the present procedural posture" of the case. *Id. See also Bolinger v. Virgin Island Telephone Corp.*, 293 F. Supp.2d 559, 568 (D.VI. 2003) (allowing claims for breach of contract and misrepresentation to stand under Rule 8(e)(2), noting that it is "not necessary for the court to project the ultimate success of plaintiff's amended claims at this time").

To the extent Doran attempts to argue that the Complaint does not explicitly designate Counts II and III as having been pled in the alternative, this is not dispositive, as the Seventh Circuit has stated that under Rule 8, a plaintiff "need not use particular words to plead in the alternative" as long as "it can be reasonably inferred that this is what [he was] doing." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000).

Accordingly, the Court should deny Doran's Motion To Dismiss Count III as premature, and allow Colleen to pursue discovery as to both Counts II and III, as "[d]ismissal of plaintiff's alternative theories at this stage would violate the liberal policy of Rule 8(e)(2) which allows

plaintiffs wide 'latitude' in framing their right to recover." *Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 40 (S.D.N.Y. 1991).

**Conclusion**

For all of the foregoing reasons, Plaintiffs Brian Ruhnke and Colleen Ruhnke respectfully request that the Court deny Defendant Philip A. Doran's Motion To Dismiss Counts II and III, brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

BRIAN RUHNKE and COLLEEN RUHNKE

By:________________________
One of their Attorneys

Alvin R. Becker, Atty. No. 147966
Deane B. Brown, Atty. No. 6203878
Beermann, Swerdlove, Woloshin,
Barezky, Becker, Genin & London
161 N. Clark Street, Suite 2600
Chicago, Illinois 60601
(312) 621-9700