# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRIAN RUHNKE AND ) <br> COLLEEN RUHNKE ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> PIPE FITTERS' WELFARE FUND et al. ) <br> ) <br> Defendant. ) | Case Number: 05 C 1395 <br><br> Honorable Judge Marovich <br><br> Magistrate Judge Denlow |

### Notice of Filing

PLEASE TAKE NOTICE that on June 8, 2005 the undersigned caused to be filed with the Clerk of Court for the Northern District of Illinois at 219 South Dearborn Street, Chicago, Illinois, the attached **Defendant's Reply in Support of his Motion to Dismiss**.

Attorney for Defendant
Philip A. Doran

James L. Kopecky, P.C.
321 N. Clark Street, Suite 2200
Chicago, IL 60610
(312) 527 – 3966
Atty No. 40148

## CERTIFICATE OF SERVICE

I, James L. Kopecky, certify that I caused a copy of the foregoing **Defendant's Reply in Support of his Motion to Dismiss** be served by United States Mail upon:

Alvin R. Becker
Beerman Swerdlove, Woloshin
Barezky, Becker, Genin & London
161 North Clark Street, Suite 2600
Chicago, IL 60601

Dennis R. Johnson
Jennifer C. Smetters
Johnson, Smetters & Krol LLC
208 S. LaSalle, Suite 1602
Chicago, IL 60606

before the hour of 5:00 p.m. on June 8, 2005.

James L. Kopecky

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRIAN RUHNKE AND COLLEEN RUHNKE | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| PIPE FITTERS' WELFARE FUND et al. an employee benefit plan, and Philip A. Doran, | ) ) ) ) |
| Defendants. | ) |

Case Number: 05 C 1395

Honorable Judge Marovich

Magistrate Judge Denlow

### Reply to Plaintiffs' Response to Defendant's Motion to Dismiss

Defendant, Philip A. Doran, by counsel, James L. Kopecky, P.C., in Reply to Plaintiffs' Response to Defendant's Motion to Dismiss states as follows:

**I.  Plaintiffs Did Not and Cannot Plead Valid Causes of Action**

Plaintiffs' response brief, like their complaint, ignores the requirements for pleading valid causes of actions for legal malpractice and breach of fiduciary duty.

To plead a sufficient cause of action for legal malpractice, the plaintiff must plead facts establishing damages and that the alleged breach of defendant's duty was the proximate cause of those alleged damages. *See Majumbar v. Lurie*, 274 Ill.App.3d 267, 272, 653 N.E.2d 915, 920 (1st Dist.1995). Damages and proximate cause are also required elements of a cause of action for breach of fiduciary duty. *See Rose v. Mony Life Insurance Company*, 2001 U.S. Dist. LEXIS 2200 (attached hereto).

Here, Plaintiffs' complaint purports to allege proximate cause and damages in paragraphs 33 and 34 of the complaint. Examining the allegations of the complaint and Plaintiffs' response brief, reveals that Plaintiffs did not, and cannot, state valid causes of action.

### A. Plaintiffs' Unsupported Conclusions of a Right to Reimbursement is Insufficient to Allege Damages and Proximate Cause

Paragraph 33 alleges, in essence, that Doran failed to exercise reasonable care when he compromised Plaintiffs' "rights under the Plan to receive payment for future medical bills related to the accident, up to the amount of the personal injury settlement." This is a conclusion unsupported by any factual allegations.

Plaintiffs did not, and cannot, plead any "right" to receive reimbursement for future medical expenses. Plaintiffs' response brief admits this. Plaintiffs argue that there is "in fact, a 'question' as to what happens to Colleen's future medical payments relating to the [a]ccident after she has reimbursed the Fund for benefits paid to date." *See Plaintiff's Response Brief*, p. 7, ¶ 1. Plaintiffs' complaint, however, cites to no Plan provision demonstrating any "right" to receive future benefits. Plaintiffs plead no facts in support of any such right. To the contrary, in Plaintiffs' response brief, Plaintiffs argue that the Plan is silent or ambiguous regarding what happens to medical bills following the accident.

These allegations, and Plaintiffs argument, are woefully insufficient to sustain a cause of action. Plaintiff must sustain an "injury in fact" to sustain a cause of action. *See Reid L. v. Ill. State Bd. Of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004). A party must specifically allege an injury in fact which is "an invasion of a legally protected interest that is concrete and particularized, and thus, actual or imminent, [and] not conjectural or hypothetical. *See Reid L.*, 358 F.3d 515 *quoting Lujan v. Defenders of Wildlife*, 514 U.S. 555, 560-61 (1992). Plaintiffs' "question" as to what would have happened after the alleged compromise admits that their damages are conjectural and hypothetical. Plaintiffs must plead, and later prove, that they would have received reimbursement for medical bills following the settlement. Plaintiffs cannot. Plaintiffs

2

did not suffer, and cannot allege, concrete, particularized damages. Their complaint, therefore, should be dismissed.

### i. Plaintiffs Have No Right to Reimbursement Under the Plan

The Plan's administrator denied payment of future medical bills related to the Accident and the Trustee affirmed that denial <u>based on the terms of the Plan</u>. There is no misstatement, blatant or otherwise, regarding this fact in Doran's Motion to Dismiss. The appeal denial letter is attached to the Complaint for this Court to review. As the letter states, and as the Fund eloquently explains on p. 12 of its Motion to Dismiss, the Plan provisions interpreted by the Trustee required Colleen to reimburse the Fund 100% of amounts expended by the Fund on medical bills related to the accident. Any additional payments after the settlement, therefore, would have been offset by an equal and opposite obligation to reimburse the Fund 100% of any such payments. Accordingly, Plaintiffs had no right to reimbursement of future medical bills related to the accident regardless of what Doran did or did not do.

Indeed, any interpretation of the Plan requiring the Fund to reimburse Plaintiffs for future medical bills relating to the accident would lead to absurd results. For example, Mrs. Injured is injured in an accident caused by Mr. Negligent. Mrs. Injured's doctors charge her $1000 for her first visit and tell her that next month she will require surgery that will cost $100,000. The ERISA Plan pays the $1000 for the first visit. Mrs. Injured immediately settles her claim with Mr. Negligent for his $100,000 policy limit. Mrs. Injured reimburses the ERISA Plan the $1000. She then undergoes the $100,000 surgery and submits the bill to the ERISA Plan. If the ERISA Plan were required to pay the cost of the $100,000 surgery without reimbursement rights, Mrs. Injured would receive a windfall. Mrs. Injured would receive both a $100,000 surgery as well as $99,000 in proceeds from the settlement while the Plan would be denied any right to recover

3

reimbursement for payments made for medical treatment on her behalf. This cannot be a valid interpretation of the Plan, yet it is the interpretation Plaintiffs seek.

Consequently, Plaintiffs' did not, and cannot, plead that Colleen would have been entitled to reimbursement for future medical bills regardless of the alleged unauthorized compromise of the Plan's lien. Accordingly, Plaintiffs did not, and cannot, plead Doran's actions caused damages or were the proximate cause of any alleged damages.

### B.  Under Plaintiffs' Theory They Are Still Ahead $67,539.00

Paragraph 34 alleges that Plaintiffs suffered damages because after Doran compromised the Fund's lien, Plaintiffs were forced to pay approximately $12,800 in medical bills allegedly related to the accident and Plaintiffs were forced to hire attorneys and incur legal fees. Plaintiffs, however failed to allege, and failed to address in their response brief, what they would have done had Doran explained the compromise of the lien. There are only two options, and each demonstrates that Plaintiffs did not suffer damages as a result of the alleged unauthorized compromise.

First, Plaintiffs could have authorized Doran to accept the compromise of the lien (which they did) and expressly agreed to waive any purported rights to future reimbursement.

Second, Plaintiffs could have rejected the compromise. In such case, Plaintiffs would have paid the entire $225,132.99 to the Fund. Under this scenario, taking Plaintiffs' allegations as true, drawing all possible inferences from those allegations in her favor, and assuming *arguendo* that Plaintiffs would have retained rights to reimbursement of future medical bills from the Fund, Plaintiffs still have not suffered damages. At least and until Plaintiffs expend more than $67,539.90 on medical bills they are not out of pocket anything. At this point, Doran's alleged unauthorized compromise of the lien has not caused damages to the Plaintiffs but instead

4

has resulted in an additional recovery to Plaintiffs of $67,539.90, representing the difference between what Plaintiffs would have paid the Fund had Doran not accepted the compromise and what they actually did pay the Fund.

Plaintiffs' complaint, however, alleges only $12,800 in payments for future medical bills. Unless and until Plaintiffs expend more than $67,539.90 on future medical bills, Plaintiffs were not damaged by anything Doran did. To this day the alleged unauthorized compromise has yielded for Plaintiffs an additional windfall of $54,739.90.

### C.     Count III Should Be Dismissed Under Illinois Substantive Law

Despite Plaintiffs' argument that they alleged the Breach of Fiduciary Duty claim "in the alternative," it still must be dismissed. The case law cited by Doran is substantive Illinois law. Illinois substantive law applies here. As stated by the Illinois Appellate Court in *Majumbar v. Lurie*, not every legal malpractice rises to the level of a breach of fiduciary duty. *See*, 274 Ill.App.3d 267, 273-74, 653 N.E.2d 915, 920-921 (1st Dist. 1995). When the same operative facts are used to support both claims resulting in the same injury to the plaintiff, the actions are "identical and the later should be dismissed as duplicative." *Id*. This is true regardless of whether Plaintiffs properly pled the counts in the "alternative."

Here, Plaintiffs base their claim for breach of fiduciary duty on the same, identical operative facts as the claim for legal malpractice and allege the same exact injury as a result of both claims. Accordingly, Count III for Breach of Fiduciary Duty is duplicative and should be dismissed.

WHEREFORE, Defendant, Philip A. Doran, prays that this Court enter an Order dismissing Plaintiffs' Complaint with prejudice, or alternatively, dismissing Count III of Plaintiffs' complaint with prejudice, and for such other and further relief as this Court deems fair and just.

Respectfully submitted,

Attorney for Defendant
Philip A. Doran

James L. Kopecky
James L. Kopecky, P.C.
321 N. Clark, Suite 2200
Chicago, IL 60602
312-527 – 3966
Atty No. 40148

6

LEXSEE 2001 U.S. DIST. LEXIS 2200

ANN ROSE, MICHAEL SCOTT, WENDIE ROSE SCOTT and MICHAEL ROSE, Plaintiffs, vs. MONY LIFE INSURANCE COMPANY, MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, MONY LIFE INSURANCE COMPANY OF AMERICA, RAYMOND C. VESELIK and SCOTT VESELIK, Defendants.

99 C 4279

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2001 U.S. Dist. LEXIS 2200*

February 28, 2001, Decided
March 2, 2001, Docketed

**DISPOSITION:** [*1] Defendants' motion to dismiss Counts XI through XV of Plaintiff's Second Amended Complaint granted in part and denied in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** For ANN ROSE, MICHAEL SCOTT, WENDIE ROSE SCOTT, MICHAEL ROSE, plaintiffs: Nathan H. Lichtenstein, Lisa J. Brodsky, Paul Andrew Greenberg, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL.

For MONY LIFE INSURANCE CO, MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, MONY LIFE INSURANCE COMPANY OF AMERICA, defendants: Steven Michael Hartmann, Aren Lance Fairchild, Freeborn & Peters, Chicago, IL.

For RAYMOND C VESELIK, SCOTT VESELIK, defendants: David A. Baugh, Ellen Louise Flannigan, Kovitz Shifrin & Waitzman, Chicago, IL.

For RICHARD BARTELT, WILDMAN HARROLD ALLEN & DIXON, defendants: William G. Schopf, Jr., Patrick Joseph Heneghan, Jose A. Lopez, Schopf & Weiss, Chicago, IL.

For RICHARD BARTELT, WILDMAN HARROLD ALLEN & DIXON, defendants: Susan Hovey Webster, O'Hagan, Smith & Amundsen, L.L.C., Chicago, IL.

**JUDGES:** Charles P. Kocoras, United States District Judge.

**OPINIONBY:** Charles P. Kocoras

**OPINION:**

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on certain Defendants' motion to dismiss Counts XI [*2] through XV of Plaintiff's Second Amended Complaint. For the reasons stated below, the Court grants the motion in part and denies the motion in part.

**BACKGROUND**

For purposes of this motion to dismiss, the Court accepts Plaintiff's allegations as true. This case arises from the relationship between Plaintiffs Ann Rose, Michael Scott, Wendie Rose Scott, and Michael Rose ("Plaintiffs") and their insurance agent Raymond Veselik. The Second Amended Complaint alleges that following the death of Ann Rose's husband in 1974, Ann Rose became increasingly dependent upon Veselik for assistance with her personal estate. The Plaintiffs allege that Veselik created a "Churning Scheme" to induce Plaintiff to purchase and maintain additional insurance policies, thereby creating income in the form of commissions, premiums, interest, and other fees and

charges. A more complete summary of the background of Plaintiffs' claims against Veselik and the insurance companies can be found in the Court's earlier opinion. See *Rose v. MONY Life Insurance Co., 2000 U.S. Dist. LEXIS 18887, 2000 WL 1898474* (N.D. Ill. Dec. 21, 2000) (denying Veselik's motion to dismiss Plaintiff's Second Amended Complaint).

The allegations [*3] against Defendants Richard Bartelt and his law firm Wildman Harrold Allen & Dixon (collectively the "Attorney Defendants") begin around 1990. Around this time, Ann Rose asked Veselik about discrepancies between representations from Veselik and information she received from MONY. Veselik suggested she retain Bartelt to resolve any concerns the MONY policies. Bartelt agreed to represent Plaintiffs even though he had represented Veselik in connection with other claims brought against him by other MONY policyholders in cases similar to the allegations in the current matter. Bartelt did not advise Plaintiffs that other MONY policyholders had lodged identical complaints against Veselik, and Bartelt did not advise Plaintiffs of his prior representation of Veselik in connection with those matters. Instead, Bartelt confirmed the substance and accuracy of Veselik's representations.

In 1990, Ann Rose questioned Veselik about the premiums of one particular policy. In response to Rose's concerns and allegedly to further the Churning Scheme, Bartelt drafted a letter agreement between Veselik and Rose to resolve any conflict between the terms of the policy and Veselik's representations. The Plaintiffs [*4] have alleged that Bartelt knew that the letter agreement was ineffectual and a nullity. In reliance on this letter, Rose maintained her policies with MONY.

In 1996, Plaintiffs asked the Attorney Defendants to investigate any claims the Plaintiffs might have against MONY and Veselik. The Attorney Defendants failed to disclose to Plaintiffs: 1) Veselik was no longer an agent of MONY and Bartelt had negotiated the terms of Veselik's resignation; 2) the Attorney Defendants were representing Veselik in a suit brought by MONY; 3) that Veselik's resignation from MONY was precipitated by Veselik's alleged fraudulent scheme.

As a result of the Churning Scheme and other alleged misconduct, Plaintiffs have suffered damages in the form of lost premiums, interest, cash values, death benefits, and other charges for lapsed or expired policies. Plaintiffs have had to make payments in excess of those represented by Veselik in order to prevent the insurance policies from lapsing. Also, Plaintiffs have suffered tax penalties on withdrawals from their annuities.

Plaintiffs filed their Second Amended Complaint on October 5, 2000. The Complaint features five counts directed at the Attorney Defendants: [*5] Count XI alleges attorney malpractice by Bartelt and the law firm; Count XII alleges breach of fiduciary duty by Bartelt and the law firm; Count XIII alleges constructive fraud against Bartelt and the law firm; Count XIV alleges fraud against Bartelt and the law firm; and Count XV alleges a conspiracy to defraud by Bartelt and Veselik. The Attorney Defendants have moved to dismiss the counts against them.

### LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to determine whether the plaintiff has stated a claim upon which relief can be granted. See *Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir. 1995)*. The court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. See *Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1319 (7th Cir. 1997)*. Dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts to support allegations in the claim. See *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); Strasburger v. Board of Educ., 143 F.3d 351, 359 (7th Cir. 1998)*. [*6] Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of a cause of action. See *Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992)*.

### DISCUSSION

In their motion to dismiss, the Attorney Defendants challenge each one of the counts alleged against them in the Second Amended Complaint. This Court will deal with each count in turn. Both parties appear to agree that Illinois law applies to the claims against the Attorney Defendants.

1. Count XI- Attorney Malpractice

To bring a claim for legal malpractice, a plaintiff must allege: (1) the existence of an attorney-client relationship; (2) a breach of that duty by the attorney; (3) proximate cause; and (4) damages. *Owens v. McDermott, Will & Emery, 316 Ill. App. 3d 340, 736 N.E.2d 145, 155, 249 Ill. Dec. 303 (Ill. App. 2000)*.

The Defendants contend that Plaintiffs cannot properly plead damages. The Defendants instead contend that Plaintiffs' claim for legal malpractice is premature. The "prematurity doctrine," as stated in Illinois case law, serves to dismiss legal malpractice cases where the damage from the [*7] attorney's alleged malpractice has not yet come to pass. The typical application of the prematurity doctrine is in a case involving the typical malpractice suit. Such a suit features representation by the attorney in litigation, the client's dissatisfaction with

the results of the litigation, and the client's allegations of malpractice during the litigation. See *Alper v. Altheimer & Gray*, 65 F. Supp. 2d 778, 784 (N.D. Ill. 1999). The prematurity doctrine forces would-be litigants to wait until there exists an adverse result in the underlying litigation before filing their claim. Only then can the putative plaintiff properly allege damages. See, e.g., *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349, 703 N.E.2d 473, 480-81, 234 Ill. Dec. 612 (Ill. App. 1998).

The Defendants claim that the Plaintiffs' malpractice claim is premature, because Plaintiffs cannot allege that Defendants conduct has caused them to sustain actual damages. The Defendants take the position that the damages alleged in the Complaint cannot be allocated to the attorneys' malpractice as long as the Plaintiffs claims are still pending against MONY and Veselik. [*8]

This Court finds the recent case of Alper v. Altheimer & Gray instructive. In Alper, the court found that as long as (1) the underlying transaction is complete; and (2) the damages are not speculative, a legal malpractice action can proceed. 65 F. Supp. 2d at 785. This test is applicable in the current matter, since this is not the "paradigmatic legal malpractice suit." See *id. at 784*. Here, the representation for which the Attorney Defendants were retained is completed. See id. Further, the damages alleged by Plaintiffs are not too speculative. "This is crucial, because [the Illinois courts that have found malpractice cases to be premature] ground their finding in a determination that damages are too speculative." *Id. at 785* (citations omitted). In this case, the Plaintiffs allege they have suffered damages in the form of lost premiums, interest, cash value, death benefits, and other various charges. Based on their Complaint, the Plaintiffs can demonstrate that they were injured by the Attorney Defendants' advice. Cf. *Farm Credit Bank v. Gamble*, 197 Ill. App. 3d 101, 554 N.E.2d 779, 781, 143 Ill. Dec. 844 (Ill. App. 1990) (dismissing legal malpractice [*9] claim because the plaintiff "at this point cannot demonstrate that he was injured by [the attorney's] advice"). "Actions in legal malpractice are based on damages incurred." Id. According to their Complaint, the Plaintiffs have incurred damages as a result of the malpractice, and the Court must take Plaintiffs's allegations as true at this stage of the litigation.

The Defendants' motion to dismiss Count XI (Attorney Malpractice) is denied.

2. Count XII- Breach of Fiduciary Duty

To bring a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary duty owed by defendant to the plaintiff; (2) defendant's breach of that duty; and (3) that plaintiff suffered actual damages as a result of that breach. *Arena Football League v. Roemer*, 9 F. Supp. 2d 889, 896-97 (N.D. Ill. 1998). Defendants contend that Plaintiffs breach of fiduciary duty claim is essentially the same as their legal malpractice claim.

A fiduciary duty exists as a matter of law between an attorney and his client, but every alleged malpractice by an attorney does not rise to the level of a breach of fiduciary duty. *Calhoun v. Rane*, 234 Ill. App. 3d 90, 599 N.E.2d 1318, 1321, 175 Ill. Dec. 304 (Ill. App. 1992). [*10] When a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim, Illinois courts will dismiss the later claim as duplicative. See *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 653 N.E.2d 915, 921, 210 Ill. Dec. 720 (Ill. App. 1995). Here, the Court must determine if any *operative* facts exist that distinguish the Plaintiffs' legal malpractice claim from their breach of fiduciary duty claim. Plaintiffs have essentially alleged that Defendants had a conflict of interest in their representation of Plaintiff at the same time they were representing Veselik. This Court fails to see any meaningful difference in the allegations contained in Count XI (Attorney Malpractice) and Count XII (Breach of Fiduciary Duty).

This Court still believes that it is possible, under Illinois law, to properly plead a cause of action for malpractice and a separate action for breach of fiduciary duty. See *Pavilion Hotel Corp. v. Koch*, 2000 U.S. Dist. LEXIS 378, 2000 WL 51817 (N.D. Ill. Jan. 14, 2000). The Plaintiffs have simply failed to do so in this case.

The Defendants' motion to dismiss Count XII (Breach of Fiduciary Duty) is granted.

3. Count XIII- Constructive [*11] Fraud

Constructive fraud is an act of omission that requires "neither actual dishonesty nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others." *Index Futures Group, Inc. v. Ross*, 199 Ill. App. 3d 468, 557 N.E.2d 344, 349, 145 Ill. Dec. 574 (Ill. App. 1990).

Illinois courts have held that a necessary element of a claim of constructive fraud is the finding of a breach of fiduciary duty. See, e.g., *Paskas v. Illini Federal Savings & Loan Assoc.*, 109 Ill. App. 3d 24, 440 N.E.2d 194, 198, 64 Ill. Dec. 642 (Ill. App. 1982) ("constructive fraud will be found in a breach of a duty arising out of a fiduciary or confidential relationship"). Here, the Plaintiffs have not properly alleged a breach of fiduciary duty, and as such, the claim for constructive fraud cannot stand. See *Kohler v. Leslie Hindman, Inc.*, 1994 U.S. Dist. LEXIS 6732, 1994 WL 233801 (N.D. Ill. May 20, 1994). Both

sides seem to agree that a party's claim for constructive fraud cannot stand when that party's claim for breach of fiduciary duty is dismissed. See Pl. [*12] 's Response to Def.'s Motion to Dismiss at 13 (noting that "the converse of [Defendants' argument] is equally true: where a plaintiff adequately pleads a cause of action for breach of fiduciary duty, a claim for constructive fraud is also properly stated").

The Defendants' motion to dismiss Count XIII (Constructive Fraud) is granted.

4. Count XIV- Fraud

To state a claim for fraud, a plaintiff must allege: (1) that defendant made a statement (or omission); (2) that the statement was material; (3) that the statement was untrue; (4) that the defendant knew the statement was untrue or was in culpable ignorance of the statement's veracity; (5) that defendant had the intent that plaintiff rely on the statement; (6) that plaintiff actually relied on the statement; and (7) the reliance resulted in damages to the plaintiff. *Small v. Sussman, 306 Ill. App. 3d 639, 713 N.E.2d 1216, 1221, 239 Ill. Dec. 366 (Ill. App. 1999).* In addition to these elements, a plaintiff pleading fraud in federal court must satisfy the particularity requirements of *Federal Rule of Civil Procedure Rule 9(b)*.

The Defendants claim that Plaintiffs have not pleaded fraud with sufficient particularity. [*13] The Seventh Circuit has held that a plaintiff must state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777 (7th Cir. 1994)* (citations omitted). Further, a complaint for fraud cannot stand on "rote conclusions." See *Robin v. Arthur Young & Co., 915 F.2d 1120, 1127 (7th Cir. 1990) cert. denied, 499 U.S. 923, 113 L. Ed. 2d 250, 111 S. Ct. 1317 (1991).* Here, the plaintiffs have set forth a number of specific allegations with adequate detail. The Plaintiffs recount specific instances where Bartelt is alleged to have intentionally misled the Plaintiffs while in a position of power. The purpose of the particularity requirement is to force the plaintiff to make a thorough investigation of a claim of fraud before filing a complaint. See *Ackerman v. Northwestern Mutual Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1999).*

The Defendants further claim that the Plaintiffs' Complaint does not adequately plead scienter. Although [*14] the Federal Rules of Civil Procedure require that fraud be pled with particularity, "malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Fed. R. Civ. P. 9(5).* The complaint must provide facts from which it can be inferred that the defendants possessed the requisite mental state. *Bell & Howell Financial Services Co. v. St. Louis Pre-Sort, Inc., 1999 U.S. Dist. LEXIS 16233, 1999 WL 965961 (N.D. Ill. Sept. 29, 1999) citing DiLeo v. Ernst & Young, 901 F.2d 624 at 627, 629 (7th Cir. 1990).* The Court believes that this Complaint does provide a basis to believe Plaintiffs could prove scienter. The Complaint alleges that Bartlet and his law firm deliberately did not inform Plaintiffs of their representation of Veselik. The Complaint also alleges that the Attorney Defendants knew that the Letter Agreement was worthless, and yet they presented it to Ann Rose and represented that it was going to resolve discrepancies between Veselik and MONY's representations.

The Defendants' motion to dismiss Count XIV (Fraud) is denied.

5. Count XV- Conspiracy to Defraud

To properly allege a civil conspiracy, a plaintiff must plead: (1) a combination of [*15] two or more persons; (2) for the purpose of accomplishing by some concerted action; (3) either an unlawful purpose or a lawful purpose by unlawful means. *Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 645 N.E.2d 888, 894, 206 Ill. Dec. 636 (Ill. 1994).* In addition, this Court has required that conspiracy must be pled with particularity under *Federal Rule of Civil Procedure 9(b).* See *Cohabaco Cigar Co. v. United States Tobacco Co., 1998 U.S. Dist. LEXIS 17472, 1998 WL 773696 *6-7 (N.D. Ill. Oct. 30, 1998).*

An allegation of civil conspiracy must state facts, not mere conclusions. "Simply mouthing conclusory assertions of 'conspiracy' in the context of an asserted fraud will not suffice." *Eisenhauer v. Stern, 2000 U.S. Dist. LEXIS 922, *4, 2000 WL 136011, *2 (N.D. Ill. Jan. 27, 2000).* A plaintiff must allege specific facts showing the existence of an agreement between the alleged conspirators. *Herion v. Village of Bensenville, 2000 U.S. Dist. LEXIS 16745, 2000 WL 1648937 (N.D. Ill. Nov. 1, 2000).* Here, the Complaint's conspiracy count is simply a reiteration of the previous counts with an added assertion of conspiracy. No facts are alleged to show the existence of an agreement to defraud between Veselik and Bartelt. [*16] Such conclusory allegations will not support a claim for civil conspiracy.

The Defendants' motion to dismiss Count XV (Conspiracy to Defraud) is granted.

6. Supplemental Jurisdiction

Defendants also request that this Court decline to exercise supplemental jurisdiction over these cases. See *28 U.S.C. Sect. 1367(a).* State claims can be brought in

the same action as federal claims when the claims at issue derive from the same operative facts, and courts generally require only a "loose factual connection between the claims." *Herman v. Wolfe, 1998 U.S. Dist. LEXIS 1020,* *14, *1998 WL 30706* *3 (N.D. Ill. January 26, 1998) citing *Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir. 1995).* A factual connection certainly exists here. The Plaintiffs allege the Attorney Defendants to be intimately involved with the Churning Scheme used to defraud in this case.

**CONCLUSION**

Defendants' motion to dismiss is granted with respect to Count XII (Breach of Fiduciary Duty), Count XIII (Constructive Fraud), and Count XV (Conspiracy to Defraud). Those claims are hereby dismissed from the Second Amended Complaint. Defendants' motion to dismiss is denied with respect to Count [*17] XI (Attorney Malpractice) and Count XIV (Fraud).

Charles P. Kocoras

United States District Judge

Dated: FEB 28 2001