UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN RUHNKE and COLLEEN RUHNKE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 05 C 1395 |
| ) | |
| PIPE FITTERS' WELFARE FUND, ) | Judge George M. Marovich |
| LOCAL 597, an employee benefit plan, ) | |
| and PHILIP A. DORAN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Brian Ruhnke (Mr. Ruhnke") and Colleen Ruhnke ("Mrs. Ruhnke") filed a three-count complaint against two defendants, Pipe Fitters' Welfare Fund, Local 597 (the "Plan") and Philip Doran ("Doran"). Against the Plan, plaintiffs assert that Mrs. Ruhnke was denied benefits to which she was entitled under an ERISA plan in violation of the Employee Retirement Income Security Act ("ERISA") § 502 (a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B). Against Doran, Mrs. Ruhnke asserts a claim for legal malpractice and a claim for breach of fiduciary duty.

Before the Court are two motions to dismiss, one filed by each defendant. For the reasons set forth below, the Court grants the defendant Plan's motion to dismiss. The Court dismisses without prejudice for lack of jurisdiction the claims (counts II and III) against defendant Doran. The Court denies as moot Doran's motion to dismiss.

**I.     Background**

For purposes of these motions to dismiss, the Court takes as true the allegations in the complaint. In addition, the Court considers the Pipe Fitters' Welfare Fund, Local 597 Summary Plan Description and Plan Document (the "Plan"), which is attached to plaintiffs' complaint, and

the other letters that are attached to plaintiff's complaint. *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002); Fed.R.Civ.P. 10(c). The Court also considers the amendments to the Plan, which are attached to defendant's motion to dismiss. The Court may consider these amendments without converting the motion to dismiss into a motion for summary judgment because the Plan was attached to the complaint, the amendments are part of the Plan, the documents are relevant to plaintiffs' claims, and they do not require discovery to authenticate or disambiguate. *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002).

Plaintiff Mrs. Ruhnke is a beneficiary of the defendant Plan. (Mr. Ruhnke is a plan participant). Defendant Doran is an attorney who represented Mrs. Ruhnke in connection with a lawsuit arising out of a car accident in which Mrs. Ruhnke was severely injured. In the complaint, plaintiffs allege that the car accident was caused by Jeanne Habenicht ("Habenicht"). The injuries Mrs. Ruhnke suffered in the car accident resulted in medical bills of $225,132.99 through August 6, 2003. These bills were paid by the Plan. In the future, Mrs. Ruhnke expects to incur additional medical expenses as a result of the car accident. The story of how Mrs. Ruhnke's medical expenses lead her to file claims against her former attorney and the Plan is outlined below.

The Plan contains the following subrogation language:

### SUBROGATION OR REIMBURSEMENT

Subrogation or reimbursement rules apply if the Fund pays medical bills which arise out of an incident (accident) which may result in a claim against a third-party. Under these circumstances, the Fund is entitled to reimbursement of its expenditures.

Other sources may include, but are not limited:
- other benefit plans;

- insurance company;
- Workers' Compensation; or
- any other third party which is obligated to make payments which the Fund would otherwise be obligated to make.

**Your responsibilities**

You and/or your dependent must immediately notify the Fund Office whenever a claim against a third-party is made for yourself and/or your dependent regarding any loss for which benefits are received from the Fund. You and/or your dependent must cooperate with the Fund by providing, among other things, information requested by the Fund concerning subrogation or reimbursement. You must provide the Fund Office with:

- a signed *Subrogation and Reimbursement Agreement*;
- the names and addresses of all potential third-parties and their insurer, adjusters and claim numbers;
- accident reports; and
- any other information the Fund Office requests.

The Fund Office may withhold future benefit payments until you comply with these requirements. The Fund Office may maintain an action against the third-party on your behalf. You and/or your dependent agree to give the Fund Office the right to prosecute such claim or action.

**If You Are Reimbursed By A Third Party**

If you and/or your dependent receive payment from a third party for benefits paid by the Fund, you or the third party must reimburse the Fund Office. The proceeds from the settlement or judgment must be divided as follows:

- First, a sum sufficient to fully reimburse the Fund Office for all (100%) benefits advanced. No reductions or deductions are allowed for attorneys' fees; then
- any remainder will be paid to you and/or your dependent.

The proceeds of the settlement must be divided as stated above even if you and/or your dependent are not fully compensated for the loss. However, the Fund is not entitled to receive reimbursement in excess of the amount you and/or your dependent receive from all responsible parties.

Furthermore, if you and/or your dependent receive payment from a third party for Plan benefits already received and you do not reimburse the Fund as stated above,

the Fund may take any action to recover the benefits paid. Such action includes, but is not limited to:

- withholding benefits payable to you or your dependents in the future; or
- initiating court or legal action.

(Plan at 52-53).

Pursuant to the terms of the Plan, Mr. and Mrs. Ruhnke and the Plan entered into a subrogation agreement on June 24, 1999. That agreement provides, in relevant part:

> This Subrogation and Reimbursement Agreement ("Agreement") by and between the PIPE FITTERS' WELFARE FUND, LOCAL 597 ("TRUST FUND'[sic]) and Brian and Colleen, is hereby entered into this 24th day of June, 1999.
>
> WHEREAS, the Participant sustained injuries from an "Accident" (any loss or damage) for which a "Third Party" is or may be responsible on the 5 [sic] day of May 1989.
>
> WHEREAS, the Participant has or will submit medical bills associated with the Accident to the TRUST FUND for payment.
>
> WHEREAS, this Agreement is entered in pursuant to Article XI Section 1 of the Pipe Fitters' Welfare Fund, Local 597 Plan Document.
>
> NOW THEREFORE, for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the TRUST FUND and Participant do mutually agree as follows:
>
> 1. The TRUST FUND agrees to pay the medical bills associated with the Accident according to the Pipe Fitters' Welfare Fund, Local 597 Plan Document.
>
> 2. Participant does hereby assign and subrogate to the TRUST FUND all of the rights, claims, interests, chooses or things in action and action at law, to the extent of the amount which has been or will be paid by the TRUST FUND which the Participant may have against any party, person, firm or corporation, private or public, who may be liable or may hereafter be adjudged liable for the loss, and the Participant authorizes and empowers the TRUST FUND to sue, compromise or settle in the name of the Participant, and, said TRUST FUND is hereby fully substituted in the place of the Participant. Participant further agrees that he/she will execute any

> and all appeal bonds or other instruments in writing pertaining to any litigation arising out of losses herein above referred to, at the request of the TRUST FUND's representatives.
>
> 3. Should Participant or his/her representative receive any money or other assets from a responsible Third Party, the Participant does hereby agree to reimburse the TRUST FUND 100% of the benefits paid on account of the Accident by the TRUST FUND, [sic] shall not, however, be entitled to receive reimbursement in excess of the amount which the Participant receives from all responsible Third Parties.
>
> 4. The recitals shall be a part of this Agreement.

(Exh. B to Plaintiffs' Complt.). The Plan proceeded to pay $225,132.99 for Mrs. Ruhnke's medical expenses arising from the car accident.

Mrs. Ruhnke hired Doran to represent her with respect to her rights arising from the car accident. With Doran as her counsel, Mrs. Ruhnke filed suit against Habenicht and, in June 2003, settled the lawsuit for $1,100,000.00.

Next, Doran sought to settle with the Plan its subrogation right. On August 6, 2003, an attorney for the Plan sent to Doran a letter which stated, in relevant part:

> As General Counsel to the Pipe Fitters' Welfare Fund, Local 597 and as per our telephone conversation yesterday, I am authorized to communicate to you that the Welfare Fund will accept $157,593.09 in full and final satisfaction of its rights to reimbursement and subrogation in the amount of $225,132.99.
>
> This offer shall remain valid provided payment is received within 120 days from the date shown above. If payment is not received within such time, this offer shall lapse and become void.
>
> Additionally, your client should understand that future medical bills not already paid by the Welfare Fund that are related to the above captioned matter will be her responsibility, unless and until she incurs related medical expenses which exceed the proceeds from the litigation.

(Exh. D to Plaintiff's Complt.). Doran sent a check to the Plan in the amount of $157,593.09.

According to the complaint allegations, Doran did not show the Plan's August 6, 2003 letter to Mrs. Ruhnke or discuss the subrogation settlement offer with her. Nor did Mrs. Ruhnke authorize Doran to accept the settlement offer. Doran, however, provided Mrs. Ruhnke with a "Settlement Breakdown Sheet" which stated that the Plan's subrogation claim was compromised for $157,593.09.

Later in August 2003, Mr. Ruhnke submitted to the Plan on behalf of Mrs. Ruhnke medical bills related to the Accident. The Plan denied the claim for benefits, stating "Denied Per Subrogation Agreement." Mrs. Ruhnke appealed the Plan's denial of her request for benefits. As her appeal, Mrs. Ruhnke argued:

> Both [Mr. and Mrs. Ruhnke] executed a Subrogation Agreement with the Plan. The Subrogation Agreement was in accordance with the Plan provisions and consistent with the Plan's summary of benefits provided to [Mr. and Mrs. Ruhnke].
>
> At the time of the settlement of the injury claim, in accordance with the Plan documents and the Subrogation Agreement, the Plan was entitled to recover from the settlement proceeds all of the monies it had advanced, less a reasonable attorney's fee, in procuring the reimbursement to the Plan, all in accordance with the laws of Illinois and the Employee Retirement Income Security Act (ERISA).
>
> No Plan provision, no Plan summary description, and no Subrogation Agreement provision authorized the Plan to recover any more or limit future benefits available to the members.
>
> For a reason or reasons unknown, the Plan's lawyers demanded, and Colleen's lawyer at the time, without her knowledge consent or permission required that Colleen be denied future benefits under the Plan until the full settlement amount had been expended by Colleen for any further medical treatment for injuries from that accident may require. Thus, without authority, the Plan demanded that Colleen be self-insured for any future medical figure.
>
> Colleen has received further treatment and the Plan has denied reimbursement for that treatment. The Plan's denial is respectfully unlawful and without authority in law, or in any of the Plan documents.

> We respectfully request an appeal from that denial, and that the Trustees overrule the initial denial of Plan benefits. I am available to personally appear before you.

(Exh. E to Plaintiffs' Complt.).

On November 18, 2004, the Plan denied Mrs. Ruhnke's appeal, explaining:

> The Board of Trustees reviewed the above captioned matter on November 18, 2004, and has denied the claim on appeal for the reasons in this letter.
>
> The participant submitted claims in the amount of $19,384.89 for his dependent spouse, Colleen Ruhnke. These claims are for services related to a car accident that occurred on May 5, 1999. The claims were denied based on the settlement of amounts owed by the claimant under a subrogation agreement with the Plan. The terms of the Plan are provided in the enclosed plan booklet, which is a combined Summary Plan Description and Plan Document. The relevant Plan provision entitled, Subrogation or Reimbursement, begins on page 52 of the Plan Booklet.
>
> The claimant requested an appeal of this adverse benefits determination pursuant to the Plan's claim and appeal procedures. Under the Plan's procedures, the Board of Trustees conducts a full and fair review of the claim and adverse benefit determination.
>
> On November 18, 2004, the Board of Trustees reviewed the claim on appeal including the information provided in the letter of appeal. The Board considered the following history of the case.
>
> On June 24, 1999, the claimant entered into a subrogation agreement with the Plan. The Plan agreed to pay medical bills related to the accident. The claimant agreed that should any money from a responsible third party be received, the claimant will reimburse the Plan 100% of benefits paid on account of the accident. The claimant received from a responsible third party a settlement related to the accident of approximately $1.5 million.
>
> As of August 6, 2003, the Plan paid for $225,132.99 in medical bills related to the accident.
>
> On August 6, 2003, the Plan offered to accept $157,593.09 in settlement of the $225,132.99 in medical bills that were paid by the Plan as of that date and reserved the right to offset future medical bills related to the accident against the amount received from the responsible third party. Under the terms of the Plan's

offer, the offset remains in place until the claimant incurs related medical expenses which exceed the proceeds from the litigation.

The offer of settlement is in writing and is consistent with the Plan provisions on Subrogation or Reimbursement. The offer of settlement was accepted by the claimant by sending a check for the stated amount, $157,593.09.

The claim in question is for medical expenses related to the accident. According to the terms of the August 6, 2003 settlement agreement the claimant is responsible for medical expenses related to the accident until she can show that [sic] amount of related medical expenses exceed [sic] the amount received from the proceeds from the litigation.

Accordingly, the Board voted unanimously to deny your claim on appeal. The Board had discretionary decision making authority under the Plan document and its decision is final. No further appeals are permitted under the terms of the Plan. However, you have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA). You have the right to access and copy (free of charge) all documents, records, and other information relevant to the claim.

I have enclosed a copy of the June 24, 1999 Subrogation Agreement, the August 6, 2003 Settlement Agreement, the Plan booklet, and Amendment No. 2002-3 on Claim Procedures.

(Exh. F to Plaintiffs' Complt.).

Based on these facts, Mr. and Mrs. Ruhnke assert against the Plan a claim under ERISA for denial of benefits. Mrs. Ruhnke asserts claims against her former attorney for malpractice and breach of fiduciary duty.

## II. Standard on a motion to dismiss

The Court may dismiss claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344

F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III. Discussion**

    **A. Plaintiffs' ERISA claim**

ERISA § 502 provides a cause of action for participants and beneficiaries of ERISA plans "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

Only one of the plaintiffs, Mrs. Ruhnke, alleges that she was denied benefits under the terms of the plan. Mr. Ruhnke has not alleged that he was denied benefits and, accordingly, has not stated a claim upon which relief may be granted.

As for the sufficiency of Mrs. Ruhnke's claim, a "denial of benefits challenged under § 1132 (a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

The Plan includes the discretionary language. Specifically, an amendment to the Plan provides, in relevant part:

> The Plan Administrator has the discretionary decision making authority to interpret the provisions of this Plan and determine eligibility for benefits.

> Benefits under this Plan will be paid only if the plan administrator decides in its discretion that the applicant is entitled to them.

(January 9, 2001 Plan Amendment). Although no magic words are required, this language is sufficient to confer discretionary authority and trigger the arbitrary and capricious standard of review. *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1019-1020 (7th Cir. 1998). The language is nearly identical to the "safe harbor" language that confers discretionary review. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) (holding that a plan is ensured discretionary review if it contains the following safe harbor language: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them.").

Under discretionary review, the Court's role is not to determine whether it would have made the same decision or relied on the same authority as the plan. *Mers*, 144 F.3d at 1021. Rather, the Court considers whether the denial was "downright unreasonable." *Chojnacki v. Georgia-Pacific Corp.*, 108 F.3d 810, 816 (7th Cir. 1997) (citing *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990)). The Seventh Circuit has explained:

> Under the arbitrary and capricious standard, an administrator's decision will not be overturned if "(1) 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome,' (2) the decision 'is based on a reasonable explanation of relevant plan documents,' or (3) the administrator 'has based its decision on a consideration of the relevant factors that encompass important aspects of the problem.'"

*Militello v. Southeast and Southwest Areas Pension Fund*, 360 F.3d 681, 686 (7th Cir. 2004) (quoting *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)). It is proper to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, an ERISA denial of benefits claim where it is clear from the complaint that the denial was not arbitrary and

capricious. *See Wahlin v. Sears, Roebuck & Co.*, 78 F.3d 1232 (7th Cir. 1996) (affirming Rule 12(b)(6) dismissal of ERISA denial of benefits claim where the denial was not arbitrary and capricious).

The allegations in the complaint and the documents attached to the complaint lead the Court to conclude that plaintiff can prove no set of facts that the Plan's decision to deny benefits was arbitrary and capricious. Although the Court might not have relied on the precise analysis offered by the Plan in response to Mrs. Ruhnke's appeal of the denial of benefits, that does not mean the decision was arbitrary and capricious. Rather, because "it is possible to offer a reasoned explanation" for the Plan's decision, the decision is not arbitrary and capricious. A reasoned explanation follows.

According to the complaint allegations, Mrs. Ruhnke was injured in a car accident caused by Habenicht. The Plan paid more $225,000.00 for medical expenses incurred by Mrs. Ruhnke as a result of the car accident. Mrs. Ruhnke filed suit against Habenicht for damages arising from the car accident and agreed to settle that lawsuit for $1,100,000.00. Mrs. Ruhnke has already reimbursed the Plan for the more than $225,000.00 it had already paid for her medical expenses (although the Plan agreed to accept a reduced amount). Since she received the settlement from the Habenicht lawsuit, Mrs. Ruhnke has incurred additional medical expenses of approximately $12,800.00 as a result of the car accident. The Plan has denied Mrs. Ruhnke's request for payment of the $12,800.00.

The Plan's subrogation provision states, in relevant part:

Subrogation or reimbursement rules apply if the Fund pays medical bills which arise out of an incident (accident) which may result in a claim against a third-

party. Under these circumstances, the Fund is entitled to reimbursement of its expenditures.

* * *

If you and/or your dependent receive payment from a third party for benefits paid by the Fund, you or the third party must reimburse the Fund Office. The proceeds from the settlement or judgment must be divided as follows:

- First, a sum sufficient to fully reimburse the Fund Office for all (100%) benefits advanced. No reductions or deductions are allowed for attorneys' fees; then
- any remainder will be paid to you and/or your dependent.

The proceeds of the settlement must be divided as stated above even if you and/or your dependent are not fully compensated for the loss. However, the Fund is not entitled to receive reimbursement in excess of the amount you and/or your dependent receive from all responsible parties.

(Plan at 52-53). The subrogation provision applies to Mrs. Ruhnke's medical expenses arising from the car accident because the expenses arose from an accident which resulted in a claim against a third party: Habenicht. The plain meaning of the subrogation provision is that once Mrs. Ruhnke received compensation from the third party, she was required to reimburse the Plan.

With respect to the more recent request for $12,800.00 in medical expenses arising from the car accident, the analysis is very similar. These expenses, like the expenses already paid, are expenses arising from the car accident–an accident which resulted in a claim against a third party. If the Plan had paid these expenses, it would immediately have triggered Mrs. Ruhnke's obligation to reimburse the Plan for the same amount. The Plan language explicitly requires reimbursement of "a sum sufficient to fully reimburse the Fund Office for all (100%) benefits advanced" but "the Fund is not entitled to receive reimbursement in excess of the amount [the beneficiary] receive[s] from all responsible parties." (Plan at 53). Accordingly, a reasonable

explanation for the Plan's decision is that if it paid Mrs. Ruhnke $12,800.00, Mrs. Ruhnke would immediately owe the Plan $12,800.00 and, thus, the Plan owed Mrs. Ruhnke $0 for those medical benefits. This is true because Mrs. Ruhnke's medical expenses have yet to exceed the amount she collected from the responsible third party.

Because it is possible to offer a reasoned explanation for the Plan's decision, the Plan's decision was not arbitrary and capricious. Plaintiffs can prove no set of facts upon which relief may be granted, and their claim for denial of benefits in violation of ERISA § 502(a)(1)(B) is dismissed with prejudice.

### B. Mrs. Ruhnke's claims against Doran

In addition to the ERISA claim against the Plan, Mrs. Ruhnke asserts two claims against the attorney, Doran, who represented her with respect to her lawsuit against Habenicht. Mrs. Ruhnke asserts state law claims for malpractice and breach of fiduciary duty. These claims are based on the allegations that (1) Doran failed to provide Mrs. Ruhnke with the Plan's August 6, 2003 letter, which stated "your client should understand that future medical bills not already paid by the Welfare Fund that are related to the above captioned matter will be her responsibility, unless and until she incurs related medical expenses which exceed the proceeds from the litigation"; and (2) Doran settled the Plan's subrogation right without Mrs. Ruhnke's permission.

A court must always assure itself that it has jurisdiction over claims before it. *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 381 (7th Cir. 2001). Mrs. Ruhnke alleges that the Court has jurisdiction over her state claims against Doran pursuant to 28 U.S.C. § 1367, which provides in relevant part:

>in any civil action of which the district courts have original jurisdiction, the
>district courts shall have supplemental jurisdiction over all other claims that are so
>related to claims in the action within such original jurisdiction that they form part
>of the same case or controversy under Article III of the United States Constitution.
>Such supplemental jurisdiction shall include claims that involve joinder or
>intervention of additional parties.

28 U.S.C. § 1367. Claims are part of the same case or controversy if they derive from a common nucleus of operative fact. *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995). In this case, the Court concludes that Mrs. Ruhnke's claims against Doran for malpractice and breach of fiduciary duty do not derive from the same common nucleus of operative fact as her claim against the Plan for denial of benefits. The facts underlying the denial of benefits claim revolve around the language of the Plan and the nature of Mrs. Ruhnke's medical expenses, while the claims against Doran revolve around whether Doran consulted Mrs. Ruhnke before settling the Plan's subrogation rights. Accordingly, the claims do not arise from the same common nucleus of operative fact, and the Court lacks jurisdiction over the claims against Doran. *See Berg v. BCS Financial Corp.*, 372 F. Supp.2d 1080, 1095 (N.D. Ill. 2005) (dismissing breach of contract claim as unrelated to ERISA denial of benefits claim). Although it is possible that the defendant will assert the affirmative defense of release (which might involve facts related to the state law claims), the Court will not rely on a potential affirmative defense in determining whether claims are so related as to form the same case or controversy.

Even if the Court had supplemental jurisdiction over Mrs. Ruhnke's claims against Doran, it would exercise its discretion to dismiss them without prejudice because it has disposed of the only claim over which it had subject matter jurisdiction. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are

dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.").

Accordingly, counts II and III are dismissed without prejudice for want of jurisdiction, and Doran's motion to dismiss is denied as moot.

## IV.    Conclusion

For the reasons set forth above, the Court grants the Plan's motion to dismiss and hereby dismisses count I with prejudice. The Court dismisses without prejudice counts II and III for lack of jurisdiction. The Court denies as moot defendant Doran's motion to dismiss.

ENTER:

*George M. Marovich*

_____
George M. Marovich
United States District Judge

DATED: 08/04/05